FILED
DEC 26 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PRICE CONSTRUCTION, INC.,
PLAINTIFF,

VS.

THE UNITED STATES,
DEFENDANT.

NO. 06-891 C

**COMPLAINT**

Plaintiff, Price Construction, Inc, ("Price"), for its complaint against defendant alleges as follows:

Jurisdiction

1. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601, et seq.

Parties

2. Plaintiff is a corporation organized under the laws of the State of Oklahoma.

3. Defendant is the United States of America.

Factual Background

4. The contract for this project was awarded to Price Construction Company on June 6, 2000, in the amount of $109,927.00. The contract was to be completed no later than 120 days after notice to proceed. The notice to proceed was received July 5, 2001. The original job completion date was to be 2 November 2000. The contract was awarded by the United States of America, acting by and through the United States Corps of Engineers, (hereinafter "Government").

5. The scope of work was for the installation of an oil/water separator at the Greers Ferry Dam Powerhouse, Cleborne County, Arkansas.

6. The oil/water separator was submitted to the Government on June 28, 2000. Price Construction submitted an Enquip Model M-18-30 separator as an equal to the specified Hydrasep Model HS-18000 as allowed in Section 02375, paragraph 1.1 of the contract specifications.

7. The Enquip tank was approved as an equal to the Hydrasep tank on August 31, 2000.

8. The submittal for the check valve as specified in Section 15200, paragraph 2.3.3.1 of the contract specifications was submitted on July 21, 2000 and approved by the Corps 9 August 2000.

9. Due to design defects in the plans and conflicting plans, the contract was modified and the completion date extended to May 21, 2001.

10. There followed a series of flow test performed on the tank. During the flow test, water flowed into the oil chamber of the tank which is not how the tank was designed to operate.

11. Price Construction advised the Government that they suspected that the flow problem was caused by the check valve in the tank exit line. A flow test was performed with the clapper of the check valve wired in the open position. The system still did not perform as designed.

12. The Government advised Price Construction that liquidated damages would be assessed beginning May 22, 2001. The Government advised that is was considering terminating the contract for default.

13. Price advised the Government that Price Construction and Enquip have attempted several fixes in an effort to remedy the flow problem of the system. Price explains the basic operating criteria of the separator and states that there is no way that the system can operate as designed with the specified check valve located as shown on the contract drawings.

14. Price removed the check valve from the tank exit line and replaced it with a pipe spool. Price then did a flow test on the tank and the tank performed per the plans and specification with the check valve removed. Price therefore demonstrated that the check valve required under the contract plans and specifications was the reason the system would not perform.

15. Price submitted a claim for additional compensation under the contract in the amount of $203,201.51.

16. This action is brought to review the Final Decision of the Government acting by and through the Contracting Officer, Sandra K. Easter, dated January 31, 2006. The Contracting Officer denied the claim submitted by Price. A copy of the Final Decision of the Contracting Officer is attached hereto as Exhibit A.

Count I

17. Price incorporates by reference as if stated fully herein paragraphs 1 through 16.

18. The Government directed Price to complete extra and additional work under the contract. Price submitted a Request for Equitable Adjustment for the extra contractual work in the amount of $203,201.51. Price completed all work under the contract and submitted a claim under the contract.

19. The Contracting Officer denied the claim made under the contract.

20. Price has timely filed this action within one year of the Contracting Officer Final Decision.

**WHEREFORE**, Plaintiff prays:

1. That judgment be entered in favor of Plaintiff in the amount of $203,201.51, plus interest, attorney fees and costs.

2. That plaintiff be awarded such other relief as the Court deems proper.

RESPECTFULLY SUBMITTED,
RONALD L. ROBERTS, P.C.

Ronald L. Roberts
Attorney for Price Construction, Inc.
P.O. Box 3235
Monument, CO 80132
719/491-5858 Telephone
719/531-7312 Facsimile

DEPARTMENT OF THE ARMY
LITTLE ROCK DISTRICT, CORPS OF ENGINEERS
POST OFFICE BOX 867
LITTLE ROCK, ARKANSAS 72203-0867
www.swl.usace.army.mil/

REPLY TO
ATTENTION OF

Contracting Division

January 31, 2006

SUBJECT: Contract No. DACW03-00-C-0019, Transformer Oil Containment, Greers Ferry Powerhouse, Heber Springs, Arkansas.

| QUICK FAX OfficeMax | |
|---|---|
| Date: 12/21 # Of Pages 8 | |
| To: Ron Roberts | From: Terry Price |
| Co./Dept. | Co./Dept. |
| Fax: 719-487-0756 | Fax: |
| Phone: 491-5858 | Phone: 918-496-4367 |
| Note: | E-Mail: trprice@webzone.net |

Price Construction Company
7111 South Columbia Place
Tulsa, Oklahoma 74136

Dear Mr. Price:

This is in reference to your correspondence dated May 11, 2005 requesting a final Contracting Officer's Decision. You have claimed entitlement to $203,201.51 for additional costs associated with performance of the contract.

I have reviewed your requests for payment of additional costs associated with the performance of the contract. This letter, together with the enclosed Findings of Fact, constitutes my final decision as Contracting Officer. The parenthetical references cited are to documents that record the facts and substantiate this decision.

This is the final decision of the Contracting Officer. This decision may be appealed to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, 7th Floor, Falls Church, VA 22041-3208. If you decide to make such an appeal, you must mail or otherwise furnish notice thereof to the Armed Services Board of Contract Appeals within 90 days from the date you received this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. The notice shall also include a copy of this decision. With regard to an appeal to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claims procedure for claims of $50,000 or less, or its accelerated procedures for claims $100,000 or less.

Exhibit A

In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims (except as provided in the Contract Disputes Act, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Sincerely,

Sandra K. Easter
Contracting Officer

Enclosures

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

# FINDINGS OF FACT

Contract No.: DACW03-00-C-0019

Contractor: PRICE CONSTRUCTION COMPANY
7111 SOUTH COLUMBIA PLACE
TULSA, OKLAHOMA 74136

Project: Transformer Oil Containment, Greers Ferry Powerhouse, Heber Springs, Arkansas

Claim: REIMBURSEMENT OF COSTS DUE TO DISPUTE OVER RESPONSIBILITY

## I. Introduction

A. The contract was awarded June 6, 2000 for the amount of $109,927.00. The NTP was issued on June 28, 2000 with a performance period of 120 calendar days. Seven modifications were issued, three of which increased performance time to the amount of 200 days. The resulting revised completion date being May 21, 2001. Two of the modifications increased the contract value by $9,761.23 to a total of $119,688.23.

B. This decision provides a summary of fact and opinions involved in the Contractor's claim. The contractor claims $203,201.51 in a letter dated May 11, 2005. The contractor requested USACE SWL contracting officer respond with a decision within 60 days. The claim is divided into 13 points in the Contractor's May 11, 2005 letter.

## II. Summary of Claim

A. The claim was initiated in a May 11, 2005 letter to Janet I. Holmes, Contracting Officer, and Col. Benjamin H. Butler, former District Commander of SWL. In this letter the Contractor is requesting a final decision by the contracting officer. The Contractor requests 13 items in its claim, including money damages and other related items. These points are preceded by a report providing support for the Contractors claim. Based on this section the contractor submits claim for an amount of $203,201.51.

## III. Summary of Pertinent Contract Clauses, Special Clauses, Technical Provisions, And Drawings Applicable to the Contractor's Claim

A. Contract Clause 52.233-1 "DISPUTES" establishes the claim procedure.

B. Contract Clause 52.236-5 "MATERIAL AND WORKMANSHIP" section (a) explains references in specifications to particular brand equipment and that such mention

does not limit competition. It also provides that the Contracting Officer must approve the non-specified equipment.

C. Contract Clause 52.243-4 "CHANGES" establishes the ability and procedure with which the contracting officer may make changes.

D. Contract Clause 52.246-12 "INSPECTION OF CONSTRUCTION" establishes contractor responsibility for adequate inspection of work performed and that the presence of a government inspector does not relieve the contractor of any contract requirement. The clause also provides for adjustment to the contract price for defective or nonconformance to specification.

E. Contract Clause 52.249-2 "TERMINATION FOR CONVENIENCE OF THE GOVERNMENT) establishes a contract termination procedure.

F. Contract Clause 52-246-21 "WARRANTY OF CONSTRUCTION" establishes contractor's responsibility for work and equipment under contract.

**IV. Findings of Fact/Pertinent Documents**

A. Contract No. DACW03-00-C-0019 was awarded June 6, 2000 for the amount of $109,927.00. (Tab B)

B. The Notice to Proceed (NTP) was issued on June 28, 2000 with a performance period of 120 calendar days. Seven modifications were issued, three of which increased performance time to the amount of 200 days. The resulting revised completion date being May 21, 2001. Two of the modifications increased the contract value by $9,761.23 to a total of $119,688.23. (Tab C)

C. A July 25, 2001 Letter from Price Construction states that the issue is the exit piping and components, the work to correct the problem is beyond the Statement of Work (SOW), and indicates a $10K to $15K range for cost impact. (Tab D)

D. An August 17, 2001 response from SWL Contracting to Price Construction's July letter notes the USACE position that this is a performance specification. (Tab E)

E. A November 30, 2001 letter from Enquip to Price Construction notes design changes to tank and piping "to comply with certain specification deficiencies". In particular Price proposes to construct end plate bracing to meet tank pressure requirements. Also, a different check valve is proposed as are weir and manway cover changes. (Tab F)

F. The December 4, 2001 letter from Price to USACE regarding the 30 November Enquip letter (#3 above). In this Price confirms that the pressure error was their responsibility and reasserts that the flow problem is caused by the check valve, external to the tank, and not within the scope of the contract. Price proposes "spider" beams to support the separator tank ends under pressure. (Tab G)

G. A March 13, 2002 letter from Price Construction where it agrees to install new vessel due to failure meeting pressure requirements. The letter also claims a required slope in the exit pipe meets specification, ¼" per foot. The exit piping at that time did not meet specified requirements. (Tab H)

H. The March 20, 2002 USACE letter to Price Construction attorney, Ronald L. Roberts, notes USACE willingness to work with Price to avoid termination. (Tab I)

I. A June 21, 2002 USACE letter to Price stating USACE's position that this project is governed by a "performance specification". (Tab J)

J. The June 24, 2002 response from Price's Attorney to the June 21 USACE letter, which lays out their view that this was a design specification. (Tab K)

K. The August 29, 2002 response from Price's attorney that accepts the costs for the pressure repair, but places the failure of the flow issue on the USACE's design. (Tab L)

L. An October 2, 2002 USACE letter to Price Construction that provides "design calculations". The calculations treat the tank as non-vented. This is not the case and result in an error. (Tab M)

M. The 8 October 2002 response from Price construction to USACE that notes the error in its calculations which additionally provides work items and a schedule for tank changes. (Tab N)

N. A November 14, 2002 letter from USACE to Price Construction noting a pending termination for default. This reiterates the government's case regarding Price's responsibility for choosing an alternate tank then that specified. (Tab O)

O. The November, 22 2002 Price Construction response to the November 14 USACE letter. Price's position is that the tank will work fine, by it self, but not in pipe layout at Greers Ferry. (Tab P)

P. A March 24, 2003 email from USACE to Price that follows an earlier meeting at the Greers Ferry power house. It suggests the use of a 90 degree bend outside of tank to eliminate water retention. (Tab Q)

Q. The April 4, 2003 letter from Price Construction Attorney to USACE. Page one inaccurately state that the USACE accepted that the tank would have to work flooded. Per Dushan Mrdja's earlier email on March 24, 2004, this is not the case. In this memo

represents Price again attempting to get the government to take responsibility for tank design. (Tab R)

R. The October 16, 2003 Price fax to SWL noting a plan for tank modifications to meet pressure requirements. Price states re-bore will go through original bore not a lower location. (Tab S)

S. The June 22, 2004 letter from OK congressman John Sullivan with a June 11, 2004 letter from Price to the Congressman containing a number of inaccuracies. In particular Price's letter states that the original tank met specification, which is not true in regard to pressure. (Tab T)

T. On October 12, 2004, Price Construction's attorney sends a memo asking why USACE did not respond to Price's July 1, 2004 request that the USACE terminate the contract under terms of "terminate for convenience". (Tab U)

U. On November 2, 2005, USACE sends a note to Price Construction noting three deficiencies that remain on the contract: piping insulation, closing a gap in exterior wall, and as-built drawings which include proof of 1300 gpm flow. (Tab V)

V. On December 27, 2004, Price submits a letter commenting on tank drawings and flow tests required by specification. The letter also notes completion of the two other items noted in the November 2, 2004 USACE memo to Price Construction. (Tab W)

W. On February 18, 2005, USACE responds to Price Construction's 1300 gpm submission. It notes that the submission is unacceptable. (Tab X)

X. On May 11, 2005 Price Construction filed a claim against USACE. (Tab A)

## V. Findings of Fact and Discussion

The center of this dispute is which party is responsible for the fact that the oil-water separation tank and connecting pipe work installed by the contractor in the Greers Ferry Lake Power House does not work as intended. The contract calls for a Hydrasep model HS-18000 or equal oil-water separator. Contractor Price Construction (hereinafter referred to as "Price") chose to use a tank that they considered equal to the Hydrasep, an Enquip Model N-18-30 ICB A.G.

On August 11, 2000, Price submitted documents to the Corps, requesting permission to use an Enquip tank rather than the Hydrasep tank called for in the contract. Price submitted information that purportedly proved that the Enquip tank would perform equally to the Hydrasep tank. The information given to the Corps regarding the Enquip tank made it appear that the Enquip was an equal to the Hydrasep. The submission, however only considered the tank outside the piping system. In this regard the submission was misleading, because when it was

attached to the exit piping, including a check valve as specified by the Corps, the Enquip tank does not perform properly.

It is generally understood that a specification that calls for particular manufacturer's model, part number or product is a purchase description. This description can be modified by adding the term "or equal". If such is the case, as long as the "contractor furnishes, or uses in fabrication, the specified brand name or an acceptable and approved 'or equal,' the responsibility for the proper performance generally falls on the government." *See ASBCA No. 14447.* Further, though not binding here, the Agriculture Board of Contract Appeals has found that the inclusion of the term "or equal" on a purchase description basically transforms a purchase description into a performance specification, thus putting the responsibility of warranty on the contractor. *See AGBCA No. 90-222-1.*

It must also be noted that the contract specifically states in Section 01330, at paragraph 1.3 that the contracting officers' approval for submittals shall not be construed as a complete check . . . and does not relieve the Contractor of responsibility for any error that may exist. The Government's position is that the responsibility for the selection of a separation tank has always been with Price Construction.

Because Price's submission was misleading in that it did not consider how the Enquip tank would perform with the exit piping and check valve, the responsibility for its performance did not switch to the government when the Corps accepted the submission. Regardless of the above, the responsibility for performance remained always with Price because Section 01330 at paragraph 1.3 clearly states that despite any approval by the contracting officer of a submittal, the Contractor is still responsible for any error that may exist in regard to the item(s) approved. Thus, responsibility for the proper performance of the tank always remained with Price.

This issue is further complicated by the fact that the contractor argues that it is not the tank itself that is the problem, but instead the check valve and exit piping located outside the tank. This check valve and exit piping are part of the design provided by the Corps of Engineers. Price argues that this is a design specification, and thus the responsibility for the failure lies with the Corps, who put the check valve and certain details of the exit piping in the design. The government argues that it the check valve arrangement would work fine with the Hydrasep tank; that the Enquip separator has an oil containment section that will flood greatly reducing the storage capacity, below that of the Hydrasep tank. Therefore, regardless of whether this is a design or performance specification, the responsibility for the failure lies with Price because Price chose to install the Enquip tank instead of the Hydrasep, and Price chose not to lower the location of the exit piping to meet the Corps' design requirements.

## VI. Conclusion:

Based on the above review and comments, this Contractor Officer's Decision is issued finding "No Merit" in the above listed claims.

"This is the final decision of the Contracting Officer. This decision may be appealed to the Armed Services Board of Contract Appeals Skyline 6, 7th Floor, 5109 Leesburg Pike, Falls

Church, VA 22041-3208. If you decide to appeal, you must mail or otherwise furnish written notice thereof to the Armed Services Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the contracting officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, shall include a copy of this decision, and identify the contract by number. The notice shall also include a copy of this decision. With regard to appeals to the Armed Services Board of Contract Appeals you may, solely at your election, proceed under the Board's small claims procedure for claims of $50,000 or less or its accelerated procedures for claims of $100,000 or less. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims (except as provided in the Contract Disputes Act, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision."

Approved by: Sandra K. Easter
Sandra K. Easter
Contracting Officer